CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 31 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| McAIRLAIDS, INC., <br> Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:13cv193 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| KIMBERLY-CLARK <br> CORPORATION, *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) | By: Samuel G. Wilson <br> United States District Judge |

This is an action for patent infringement under 35 U.S.C. § 271 by plaintiff McAirlaids Inc. ("McAirlaids") against Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "K-C"), arising out of the manufacture, importation, and sale of absorbent pads.[1] McAirlaids asserts, among other claims for relief, direct infringement under § 271(a) of a product-by-process patent claim, indirect inducement under § 271(b), and willful infringement. K-C has moved to dismiss McAirlaids' § 271(a) claim for relief because the process resulting in the allegedly offending product occurs in the People's Republic of China, and it has moved to dismiss the indirect inducement and willful infringement claims on the grounds that McAirlaids has not plausibly pled those claims. The court finds that McAirlaids may assert a claim for relief under § 271(a) based on the product-by-process patent claim even though the manufacturing process occurs outside the United States, and it also finds that McAirlaids has plausibly pled indirect inducement and willful infringement. Accordingly, the court will deny K-C's partial motion to dismiss.

---

[1] The parties were before the court in an earlier case alleging trademark infringement arising out of the alleged trade-dress of K-C's pads. The court found McAirlaids' alleged trade-dress to be functional, and entered summary judgment for K-C. McAirlaids, Inc. v. Kimberly-Clark Corp., 2013 WL 3788660 (W.D. Va. July 19, 2013).

I.

McAirlaids alleges K-C's production of absorbent pads directly, indirectly, and willfully infringes U.S. Patent No. 6,675,702 ("the '702 Patent"), which McAirlaids owns by assignment. Primarily at issue now is Claim 18 of the '702 Patent, which the parties agree is a product-by-process claim.[2] K-C manufactures the allegedly offending products, such as GoodNites Disposable Bed Mats, in China and then imports them to the United States where K-C offers to sell, sells, and uses them. McAirlaids alleges that K-C knew of the '702 Patent and oversaw, directed, instructed, and/or exercised control over its Chinese manufacturer to make products using the patented process described in the '702 Patent. According to McAirlaids, before all this occurred, the parties met pursuant to a signed confidential disclosure agreement. During that meeting McAirlaids disclosed to K-C its proprietary and patented manufacturing processes for making absorbent pads, and shortly after that meeting, K-C employees filed a patent application for a "Disposable Absorbent Pad," and K-C began producing the allegedly offending products.

---

[2] The '702 Patent also includes 17 process claims and 6 device claims. Claim 18 of the '702 Patent reads:
> "An absorbent fiber matt which is tear resistant, and rollable, from cellulose fibers, cellulose pulp or of wood pulp carboard without the use of additional binding agents, and has a tear strength of the fiber web is at least 0.12 kN/m, which is suitable for use in hygiene products, made by the following processing steps:
> (a) providing an irregular cellulose fiber layer and pre-condensing it under relatively low pressure to produce a loose non-woven with low density and tear strength; and
> (b) providing a pair of calender rolls having a pattern of point or line-shaped studs, defining a gap therebetween, and inserting the loose non-woven into the gap of the calender rolls that is used to create a pattern of point- or line-shaped pressure zones under relatively high pressure, where the irregularly arranged fibers are pressed onto each other, wherein
> (1) the loose non-woven has a moisture content of up to 5 percent by weight when it is inserted into the gap,
> (2) the irregularly arranged fibers are pressed onto each other under a pressure in a range between 250 and 600 MPa;
> such that a non-separating fusion of the fibers occurs creating a fiber web with an embossing pattern."

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint need not contain detailed factual allegations, but must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). When considering a Rule 12(b)(6) motion, the court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## III.

K-C seeks to superimpose process claim law and logic on McAirlaids' product-by-process claim, arguing that the court should dismiss McAirlaids' § 271(a) claim for relief because K-C manufactures the allegedly offending product in China. The court rejects K-C's arguments based on a plain reading of the statute.

The statute governing infringement of U.S. patents, 35 U.S.C. § 271, specifies actions that constitute infringement. Under § 271(a), which defines direct patent infringement, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the

patent therefor, infringes the patent."[3] 35 U.S.C. § 271(a). Patent law recognizes that some inventions, because of language limitations, "may be defined by the process of making [them]." In re Bridgeford, 357 F.2d 679, 682 (C.C.P.A. 1966). Such "product-by-process" claims "enable an applicant to claim an otherwise patentable product that resists definition by other than the process by which it is made." In re Thorpe, 777 F.2d 695, 697 (Fed. Cir. 1985). And though defined by its manufacturing process, "the invention so defined is a product and not a process." In re Bridgeford, 357 F.2d at 682; see also SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1317 (Fed. Cir. 2006) ("Regardless of how broadly or narrowly one construes a product-by-process claim, it is clear that such claims are always to a product, not a process.").

It follows that a product cannot escape an action for direct infringement under § 271(a) by virtue of its extraterritorial manufacture:

> Critically, it is the infringing act – making, using, offering to sell, selling, or importing – that must be within (or into) the United States. Even if an infringing product is manufactured outside of the United States, a person infringes if he imports the product, or uses, offers to sell, or sells it in the United States.

Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1380 (Fed. Cir. 2009) (citing In re N. Pigment Co., 71 F.2d 447, 456 (C.C.P.A. 1934) ("It has long been settled that articles patented in the United States cannot be manufactured abroad, imported, and sold in violation of the rights of the patentee.")).

Here, the parties agree Claim 18 of the '702 Patent is a product-by-process claim. As such, it protects the final product, which is the patented invention for purposes of analysis under § 271(a). Nothing in the clear language of § 271(a) requires the process steps of a product-by-

---

[3] While § 271(a) governs "any patented invention," § 271(g) is specific to the importation or sale of a "product which is made by a *process* patented in the United States." 35 U.S.C. § 271(a) & (g) (emphasis added). McAirlaids has asserted a claim for relief under § 271(g) that K-C has not challenged.

process claim to occur in the United States as an element of infringement. Nor has any case so held.[4] Accordingly, the location of K-C's product manufacturing does not defeat McAirlaids' § 271(a) claim.

IV.

Under a plausibility analysis, K-C argues that McAirlaids' claims of indirect infringement under § 271(b) and willful infringement are inadequate because they contain "boilerplate assertions" without sufficient facts.[5] The court finds McAirlaids has plausibly pled both.

A claim of indirect inducement under § 271(b) requires the plaintiff to establish that the alleged inducer "knowingly induced infringing activity and possessed specific intent to encourage another's infringement" and that the induced conduct resulted in direct infringement. Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1308 (Fed. Cir. 2012) (en banc). To adequately plead willful infringement, a plaintiff need only allege the defendant's knowledge and continued willful infringement of the patent, both plausibly supported with facts. See Mitutoyo Corp. v. Central Purchasing, LLC, 499 F.3d 1284, 1290 (Fed. Cir. 2007).[6]

---

[4] K-C relies primarily on three propositions quilted together as authority to support its contention:
(1) that "process terms in product-by-process claims serve as limitations in determining infringement," Abbott Labs. v. Sandoz, Inc., 566 F.3d 1283, 1293 (Fed. Cir. 2009) (en banc);
(2) that a "process cannot be used 'within' the United States as required by § 271(a) unless each step is performed within this country," NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed. Cir. 2005); and
(3) that § 271(a) "does not protect against the importation of products made by a patented process," Zoltek v. United States, 672 F.3d 1309, 1322 (Fed. Cir. 2012).

The latter two propositions apply to process, not product-by-process, claims. The first simply means K-C has not necessarily infringed if it produced a fiber mat as described in Claim 18, but used a different process to do so.

[5] K-C also argues McAirlaids has not adequately pled a contributory infringement claim under § 271(c). McAirlaids concedes it has not currently asserted such a claim.

[6] To actually prove willful infringement, the plaintiff must establish (1) that the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) that this objectively defined risk "was either known or so obvious that it should have been known to the accused infringer." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

McAirlaids has pled sufficient facts that tend to support the knowledge requirement. (See, e.g., First Amended Complaint, ¶¶ 19 & 21-25) Perhaps most plausibly among them, McAirlaids describes a pre-suit meeting among the parties governed by a signed confidential disclosure agreement during which it disclosed to K-C its proprietary and patented manufacturing processes for making absorbent pads. (Id. at ¶ 25) According to McAirlaids, shortly after the meeting, K-C's employees filed a patent application for a "Disposable Absorbent Pad." (Id.) Similarly, McAirlaids has pled sufficient facts and circumstances to support its allegations that K-C knowingly induced infringing activity and specifically intended to encourage infringement by others. (See, e.g., id. at ¶¶ 26 & 33-34) A complete reading of the complaint makes the following allegations clear: K-C learned of the '702 Patent through a pre-suit meeting; sought a patent based on the information it learned; and then went to work encouraging and directing its Chinese manufacturer to infringe the '702 Patent by making products like GoodNites Disposable Bed Mats. These collective allegations, and the fair inferences drawn therefrom, are sufficient to satisfy the plausibility of McAirlaids' § 271(b) indirect infringement and willful infringement claims.

V.

For the foregoing reasons, the court denies the defendants' partial Motion to Dismiss.

**ENTER:** December 31, 2013.

_____
UNITED STATES DISTRICT JUDGE