# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| MCAIRLAIDS, INC., | ) |
| Plaintiff, | ) )|
| v. | ) ) |
| KIMBERLY-CLARK CORPORATION, KIMBERLY-CLARK WORLDWIDE, INC., AND KIMBERLY-CLARK GLOBAL SALES, LLC, | ) 7:13-CV-193 ) ) ) |
| Defendants. | ) ) |

## ORDER

This matter is before the court on multiple discovery motions filed by the parties. Specifically, this order addresses Plaintiff McAirlaids, Inc.'s ("McAirlaids") Motion to Compel Continued Non-Privileged Treatment of Email Exchange and Related Drawing (Dkt. No. 234), and Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC's (collectively "K-C") Motion to Compel Evidence Concerning Ownership of the '702 Patent (Dkt. No. 239), Motion for a One Week Extension to Respond to Discovery Requests (Dkt. No. 243), and Motion for a Protective Order Precluding Deposition of K-C's In-House Litigation Counsel (Dkt. No. 249).  Having reviewed the motions and pleadings, and heard argument of counsel, it is hereby **ORDERED** as follows:

1. **McAirlaids' Motion to Compel Continued Non-Privileged Treatment of Email Exchange and Related Drawing**

McAirlaids seeks to compel the non-privileged treatment of an email exchange between two K-C employees, Angela Johnston ("Johnston") and John Rooyakkers ("Rooyakkers"), which includes an attached diagram of the manufacturing process for GoodNites bed mats.  The email

exchange occurred during the pendency of the prior trade dress litigation involving these same parties. The emails reflect that Johnston created a diagram of the GoodNites manufacturing process in response to a request from K-C's litigation counsel for a "simplified idea" of the process. Johnston forwarded the diagram to Rooyakkers via email for his review and Rooyakkers responded via email with comments about the diagram. This exchange took place shortly before Johnston completed an interrogatory answer in the trade dress case stating that the GoodNites manufacturing process uses two steel patterned rollers, which is now a central issue in this patent litigation.

The emails and attached diagram were produced by K-C during discovery; however, K-C now claims that the documents are protected by the work product doctrine, and seeks to claw the documents back pursuant to the provisions of the protective order. McAirlaids asserts that the documents are not privileged, and further argues that any privilege that may apply has either been waived by K-C's failure to list the documents on its privilege log, or is outweighed by McAirlaids' substantial need for the documents. This issue arose during the recent depositions of Johnston and Rooyakkers, and the parties agreed not to pursue any questioning related to the documents until they obtained a ruling from the court. McAirlaids subsequently filed this motion to compel, and produced the email exchange and diagram for an *in camera* review.

K-C claims that the email exchange reflects a request from K-C's litigation counsel to a K-C employee in an effort to develop the litigation strategy of the trade dress case. McAirlaids asserts that the documents merely reflect an exchange between two K-C business people without the input of lawyers. I find that these documents were prepared for litigation purposes, rather than in the ordinary course of business, and thus fall within the protection afforded by the work product doctrine. Fed. R. Civ. P. 26(b)(3); Adair v. EQT Production Co., 294 F.R.D. 1, 3–4

2

(W.D. Va. 2013).  The text of the emails reflects that Johnston is communicating a request from K-C's litigation counsel to Rooyakkers, and sending a diagram she created in response to the request for Rooyakkers' review and approval.  Such documents, generated at the request of litigation counsel to further litigation strategy, constitute protected work product material. Nat'l Union Fire Ins. Co., v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992); Adair, 294 F.R.D. at 4.

The protective order entered in this case allows K-C to "claw back" protected work product material that was produced in discovery without waiving the privilege. Dkt. No. 174, §10.  However, not all work product material is protected from discovery. The Federal Rules divide work product material into two parts: 1) opinion work product involving an attorney's mental impressions, conclusions, opinions or legal theories, which is absolutely immune from discovery;  and 2) fact work product which may be discovered upon a showing of substantial need. Fed. R. Civ. P. 26(b)(3); Nat'l Union Fire Ins. Co., 967 F.2d at 983–84. A party seeking disclosure of fact work product must demonstrate that its need is truly substantial and there is no reasonable substitute for the documents they seek. Sanford v. Virginia, Civ. Action No. 3:08cv835, 2009 WL 2947377, at *2 (E.D. Va. Sept. 14, 2009).  A non-exhaustive list of factors to assess in determining substantial need includes: 1) the importance of the materials to the party seeking them for case preparation; 2) the difficulty the party will have obtaining them by other means; and 3) the likelihood that the party, even if it obtains the information by independent means, will not have the substantial equivalent of the documents it seeks. Fed. R. Civ. P. 26, Advisory Committee's note, 1970 Amendments.

Here, I find that McAirlaids has demonstrated a sufficiently substantial need for production of the email exchange and diagram. Johnston's interrogatory answer in the trade dress

3

case was the genesis of this patent lawsuit, and a diagram she created of the manufacturing process shortly before completing the interrogatory is undeniably unique and important information.

Further, McAirlaids cannot, without undue hardship, obtain the substantial equivalent of these documents by other means. Rooyakkers previously testified that he did not discuss the embossing rollers with Johnston and had no involvement in her answer to the interrogatory. He did not disclose or discuss this email exchange or diagram during his testimony. McAirlaids has been prevented from obtaining further information from Johnston and Rooyakkers about the documents on privilege grounds. Considering the timing of the email exchange, the reasons Johnston created the diagram, and the uncertainty as to whether Johnston relied upon the diagram in developing the interrogatory answer that is at the heart of this lawsuit, I find that McAirlaids has shown substantial need for the documents. Accordingly, I **GRANT** McAirlaids' motion to compel the continued non-privileged treatment of the emails and diagram (Dkt. No. 234).

During the hearing on these motions, the parties raised concerns about the proper handling of privileged documents that are inadvertently produced and later clawed back pursuant to the provisions of the protective order. The parties also requested clarification as to how such documents should be preserved for review by the court. With respect to the handling of privileged documents sought to be clawed back under the protective order, the parties are hereby **ORDERED** that on or before October 31, 2014, they shall represent to one another that they are following the terms of the protective order, and have complied with the terms of the protective order in all respects by either returning or destroying all documents being clawed back by the opposing party. If a disagreement arises with regard to an allegedly privileged document, the

4

party seeking production shall return or destroy all copies of the document, file a motion with the court seeking production of the document, and request that the opposing party provide the document to the court for an *in camera* review, if the court deems such a review necessary.

### 2. K-C's Motion to Compel All Evidence Concerning Ownership of the '702 Patent

K-C seeks an order compelling McAirlaids to produce all documents concerning the ownership of the '702 patent-in-suit. K-C previously propounded a request for production to McAirlaids seeking "all documents and things related to the ownership, title, transfer, licensing, and/or assignment of the '702 patent," to which McAirlaids responded that it will "produce those non-privileged documents in its possession *sufficient* to show the ownership, title, transfer, licensing, and/or assignment of the '702 patent (to the extent such events occurred) at a mutually convenient time and place." Dkt. No. 247-8, p. 3 (emphasis added). McAirlaids produced several documents in discovery relating to ownership of the patent, and represented at the hearing before this court that no other documents responsive to the request exist. However, given the ambiguity of McAirlaids' statement that it would produce "sufficient" documents in response to the request, I find it proper to **GRANT** K-C's motion to compel (Dkt. No. 239), and **ORDER** that McAirlaids submit a supplemental response to K-C's Request for Production No. 12 by November 7, 2014, certifying that all documents responsive to the request have either been produced or identified on a privilege log.

### 3. K-C's Motion for a One Week Extension of Time to Respond to McAirlaids' Most Recent Sets of Discovery Requests

K-C seeks a one week extension to respond to McAirlaids' second set of requests for production and third set of interrogatories. K-C's responses were due on October 20, 2014, and K-C seeks an extension of the deadline to October 27, 2014. Counsel represented at the hearing

that production of the documents by October 27, 2014 was acceptable to both parties, and thus, K-C's motion for a one week extension (Dkt. No. 243) is deemed **MOOT**.

Additionally, upon a review of the pre-trial scheduling order and a discussion with counsel for the parties, I find it necessary and appropriate to extend the discovery deadline by one week to allow for the completion of depositions. Accordingly, it is hereby **ORDERED** that the discovery deadline of November 7, 2014 shall be extended to November 14, 2014, solely for the completion of depositions. No other pre-trial deadlines will be modified as a result of this extension.

### 4. K-C's Motion for a Protective Order Precluding the Deposition of K-C's In-House Litigation Counsel

K-C requests a protective order pursuant to Fed. R. Civ. P. 26(c) to preclude the deposition of its in-house counsel, Vicki Margolis ("Margolis"), who is an active member of its trial team. Counsel for McAirlaids requested the deposition of Margolis largely because she sent and received indemnification correspondence with K-C's manufacturer, Beijing Beishute ("BB"), which McAirlaids asserts is highly relevant to this case. Dkt. No. 250-5.

Generally, the Federal Rules permit discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, and place no restrictions on who a party may depose. Fed. R. Civ. P. 26(b)(1), 30(a)(1). The Rules provide courts the discretion to limit pretrial discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive. Fed. R. Civ. P. 26(b)(2)(C). Further, under Rule 26(c) the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P 26(c). Deposing an opponent's counsel is disfavored by the courts,

6

and the request to depose counsel itself constitutes good cause to obtain a Rule 26(c) protective order. N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D.N.C. 1987).

The parties disagree as to the proper standard this court should apply when considering a request to depose opposing counsel.  K-C asserts that the Eighth Circuit's decision in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987) is the seminal case setting the legal standard for a party seeking to depose opposing counsel, and has been uniformly followed by courts within the Fourth Circuit. The court in Shelton outlined a three-part test to determine whether to allow the deposition of an opposing party's attorney, requiring the party seeking the deposition to establish that: 1) no other means exist to obtain the information than to depose opposing counsel; 2) the information sought is relevant and non privileged; and 3) the information is crucial to the preparation of the case. Id. at 1327. The Eighth Circuit later clarified its Shelton ruling in Pamida, Inc. v. E.S. Originals, Inc., 281 F. 3d 726 (8th Cir. 2002), noting that the Shelton standard was intended to "protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy," and holding that it may not apply to attorneys outside of their role as litigation counsel in a pending case. Id. at 730.

The court in U.S. v. Phillip Morris Inc., 209 F.R.D. 13, 16–17 (D.D.C. 2002), reviewed the Shelton and Pamida decisions, and determined that the Shelton test should apply only when: 1) trial and/or litigation counsel are being deposed; and 2) such questioning would expose litigation strategy in the pending case. Id. at 17; see also Libertarian Party of Ohio v. Husted, Case No. 2:13-cv-953, 2014 WL 3509749, at *10 (S.D. Ohio July 14, 2014) (holding that the primary purpose of the Shelton test is to protect against the discovery of trial or litigation

strategy, and thus, the court should consider what role in-house counsel actually plays in a case before applying it).

McAirlaids argues that Shelton has not been widely adopted by other circuits, and advocates instead for the flexible approach set forth in cases such as In re: Subpoena Issued to Dennis Friedman, 350 F. 3d 65 (2nd Cir. 2003).  In Friedman, the Second Circuit declined to formally adopt the Shelton rule, and instead set forth a "flexible approach" to lawyer depositions whereby "the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship.  Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." Id. at 72. "Although the extent to which [the Friedman] standard actually differs in application from the Eighth Circuit approach could be debated, a number of courts appear to mirror its textured approach." 8A Wright and Miller, Federal Practice and Procedure § 2102 (3d ed. 2014).

The Fourth Circuit has not addressed the Shelton standard, although several courts within the Fourth Circuit have followed it. See, e.g., Ford Motor Co. v. Nat'l Ind. Co., 3:12cv839, 2013 WL 3831438, *2 (E.D. Va. July 23, 2013); Buyer's Direct, Inc. v. Belk,  Inc., Civ. Action No. 5:10cv65, 2012 WL 3278928, at *3 (E.D.N.C. Aug. 10, 2012); Hughes v. Sears, Roebuck & Co., Civ. Action No. 2:09cv93, 2011 WL 2671230, at *4–5 (N.D.W. Va. July 7, 2011); Asbury v. Little Loan Servicing, LP, Civ. Action No. 3:07-0500, 2009 WL 973095, at *3 n. 4 (S.D.W. Va. Apr. 9, 2009); N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, ( M.D.N.C. 1987). Specifically, in Ford Motor Co., Judge Payne declined to follow the more flexible

standard set forth in Freidman, and instead adopted the Shelton standard, noting that "district court decisions within the circuit rather uniformly have followed the Shelton standard." Id. at *2.

I am persuaded by the line of cases cited above that it is appropriate to apply the Shelton test for deposing opposing counsel in this case. Margolis, though in-house counsel, is unquestionably an active member of K-C's litigation team in both the trade dress case and in this patent litigation, and McAirlaids' request to take her deposition invokes the Shelton court's concern of protecting against the discovery of trial or litigation strategy. Accordingly, McAirlaids must establish that 1) no other means exist to obtain the information it seeks than to depose Margolis; 2) the information it seeks is relevant and non privileged; and 3) the information is crucial to the preparation of the case. Shelton, 805 F.2d at 1327.

McAirlaids' request to depose Margolis centers on correspondence between Margolis and BB during the trade dress case regarding indemnity ("the indemnity emails"). Information related to the indemnity emails is arguably both relevant and non privileged. However, McAirlaids failed to prove that no other means exist to obtain the information, and that such information is crucial to its preparation of the case.

The indemnity emails were produced in discovery, and Margolis completed an affidavit confirming that she had no other direct communications with BB. Dkt. No. 250-2. McAirlaids had the opportunity to explore the indemnity emails through Rule 30(b)(6) depositions of K-C, both in the trade dress case and in the present litigation. It is unclear what additional non-privileged information exists that McAirlaids can obtain by deposing Margolis. Regardless, McAirlaids has other means to obtain additional information regarding the indemnity emails, either by seeking discovery from BB officials or through other employees of K-C. Further, permitting the deposition of Margolis would require navigating an invisible line between her

dealings with business affairs and her role as litigation counsel, and would risk exposing K-C's

litigation strategy in this case.  Accordingly, I hereby **GRANT** K-C's motion for a protective

order precluding the deposition of its in-house counsel Vickie Margolis (Dkt. No. 249).

It is **SO ORDERED**.

Enter:  October 29, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

10